LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HERLINDA FRANCISCO and JAVIER BRAVO,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class*,

                            Plaintiffs,

            v.

EXCLUSIVE MANAGEMENT SOLUTION GROUP, INC.,
JOHN DOE CORPORATIONS 1 – 50,
and DMITRIY BEREZOVSKY
        a/k/a DMITRY BEREZOVSKIY,

                      Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, HERLINDA FRANCISCO (hereinafter "Plaintiff FRANCISCO") and JAVIER

BRAVO (hereinafter "Plaintiff BRAVO") (collectively, "Plaintiffs"), on behalf of themselves,

FLSA Collective Plaintiffs and the Class, by and through their undersigned attorney, hereby file

this Class and Collective Action Complaint against Defendants EXCLUSIVE MANAGEMENT

SOLUTION GROUP, INC.,  JOHN DOE CORPORATIONS 1 – 50 ("Corporate Defendants"),

and DMITRIY BEREZOVSKY a/k/a DMITRY BEREZOVSKIY (the "Individual Defendant")

(together with Corporate Defendant, "Defendants") and state as follows:

## INTRODUCTION

1.  Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving and improper rounding, (2) unpaid overtime, due to improper issuance of multiple paychecks per pay period, (3) liquidated damages, and (4) attorneys' fees and costs.

2.  Plaintiffs further allege, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving and improper rounding, (2) unpaid overtime, due to improper issuance of multiple paychecks per pay period, (3) unpaid spread of hours premiums, (4) unpaid call-in pay, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.  Furthermore, Plaintiffs allege, pursuant to NYLL §191, that they and others similarly situated are entitled to recover from Defendants: (1) liquidated damages; (2) interest; and (3) attorney's fees and costs, due to Defendants' untimely payments of wages to Plaintiffs and Class Members.

4.  Plaintiffs additionally allege, on behalf of themselves and others similarly situated, that Defendants willfully filed fraudulent tax information returns regarding Plaintiffs, FLSA Collective Plaintiffs and Class Members with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7434.

5.  Plaintiffs further allege that Defendants breached their contract with Plaintiffs and Class Members by failing to pay employer payroll taxes for Plaintiffs and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

6.  Plaintiffs additionally allege that, in retaining these sums for themselves, Defendants

2

unjustly enriched themselves at the expense of Plaintiffs and Class Members.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

8.  Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

9.  Plaintiff HERLINDA FRANCISCO is a resident of Bronx County, New York.

10. Plaintiff JAVIER BRAVO is a resident of Westchester County, New York.

11. Defendants own and operate a laundromat chain at the following locations throughout New York City:

      i.    1225 St. Nicholas Ave, New York, NY 10032;

      ii.    124 Nassau Ave, Brooklyn, NY 11222;

      iii.    1330 5th Ave, New York, NY 10026;

      iv.    1492 5th Ave, New York, NY 10035;

      v.    155 Calyer Street, Brooklyn, NY 11222;

      vi.    1746 1st Ave, New York, NY 10128;

      vii.    1909 Kings Highway, Brooklyn, NY 11229;

      viii.    2037 Adam Clayton Blvd, New York, NY 10027;

      ix.    2096 Madison Ave, New York, NY 10037;

      x.    211 West 16th Street, New York, NY 10011;

      xi.    2167 3rd Ave, New York, NY 10035;

      xii.    2171 Adam Clayton Blvd, New York, NY 10027;

    xiii.    2234 1st Ave, New York, NY 10029;

    xiv.    224 W 104 St, New York, NY 10025;

    xv.    242 W 116 St, New York, NY 10026;

    xvi.    2593 Frederick Douglas Blvd, New York, NY 10030;

    xvii.    303 Flatbush Ave, Brooklyn, NY 11217;

    xviii.    3476 Broadway, New York, NY 10031;

    xix.    3643 Broadway, New York, NY 10031;

    xx.    4091 Broadway, New York, NY 10032;

    xxi.    410 East 59th Street, New York, NY 10022;

    xxii.    465 Lenox Ave, New York, NY 10037;

    xxiii.    47 Kingsland Ave, Brooklyn, NY 11221;

    xxiv.    4710 Broadway, New York, NY 10040;

    xxv.    489 2nd Avenue, New York, NY 10016;

    xxvi.    545 Lenox Ave, New York, NY 10037;

    xxvii.    617 Lenox Ave, New York, NY 10037; and

    xxviii.    932 Amsterdam, New York, NY 10025;

(the "Laundromats").

12. Defendants' Laundromats are also available on Defendants' website, https://www.msbubblegreen.com/locations. *See* **Exhibit A.**

13. Plaintiffs were employed primarily at Defendants' 1225 St. Nicholas Avenue location. Plaintiff BRAVO also performed work for Defendants' Laundromats at: (i) 617 Lenox Ave, New York, NY 10037, (ii) 465 Lenox Ave, New York, NY 10037, and (iii) 1746 1st Ave., New York, NY 10128. Each of the locations where where Plaintiffs worked were under the control of

Corporate Defendant EXCLUSIVE MANAGEMENT SOLUTION GROUP, INC.

14. All the Laundromats, including those where Plaintiffs worked, are operated as a single integrated enterprise under the control of the top-level entity, Corporate Defendant EXCLUSIVE MANAGEMENT SOLUTION GROUP, INC. (also known as, and hereinafter referred to as, "EMSG Inc."), which is owned and operated by Individual Defendant DMITRIY BEREZOVSKY. Specifically, the Laundromats are engaged in related activities, share common ownership and have a common business purpose:

(a) All Laundromats are managed through the top-level entity, Corporate Defendant EXCLUSIVE MANAGEMENT SOLUTION GROUP, INC., owned and operated by Individual Defendant DMITRIY BEREZOVSKY. In *116 Street Laundromat And Dry Cleaning Inc. v. 240-42 West 116 Street Housing Development Fund Corporation* (Index No. 654876/2020) (where the plaintiff was the corporate entity which operates Defendants' Laundromat at 242 W 116 St, New York, NY 10026), Individual Defendant DMITRIY BEREZOVSKY submitted an affidavit in which, under penalty of perjury, he affirmed that he is "the President of Exclusive Management Solution Group, Inc." and that Corporate Defendant EMSG Inc. is "the Managing Agent of the Plaintiff, 116 Street Laundromat and Dry Cleaning Inc." *See* Index No. 654876/2020, NYSCEF Do. No. 3, the Affidavit of Individual Defendant DMITRIY BEREZOVSKY. 116 Street Laundromat and Dry Cleaning Inc., located at 242 W 116 St. New York, NY 10026 is listed on Defendants' joint website. *See* **Exhibit A**.

(b) Defendants advertise all their Laundromats on one single shared page of Defendants' website, https://www.msbubblegreen.com/locations. *See* **Exhibit A**.

(c) All the Laundromats are in the same business of providing organic laundry, wash and fold, and dry cleaning services. *See* **Exhibit B**, the "Services & Prices NYC" page on Defendants' website, https://www.msbubblegreen.com/pricing.

(d) Inquiries regarding any of Defendants' Laundromats can be made over the phone through the same phone number, "(212) 928-WASH", which can be found on the "Contact Us" page on Defendants' website, https://www.msbubblegreen.com/contact. *See* **Exhibit C**.

(e) Defendants even provide the same phone number for customers to directly contact several of their Laundromats, despite the Laundromats having different physical addresses. Specifically, Defendants list "347-612-9607" as the direct contact number for the Laundromats listed below:

    a.  1492 5th Ave, New York, NY 10035;

    b.  155 Calyer Street, Brooklyn, NY 11222;

    c.  4091 Broadway, New York, NY 10032;

    d.  465 Lenox Ave, New York, NY 10037; and

    e.  617 Lenox Ave, New York, NY 10037. *See* **Exhibit A**.

(f) Individuals can schedule pickups to have their clothing picked up and serviced by Defendants at the nearest of any of Defendants' Laundromats on Defendants' website, https://www.msbubblegreen.com/app/order/address. *See* **Exhibit D**.

(g)  Defendants' additionally offer their above pick up services to commercial clients and businesses, such as "Gyms, Spas and Salons, Hotels, Bars and Restaurants, Religious Facilities, Medical Offices, Department Stores, Other Laundromats and Dry Cleaning Stores". Commercial clients can contact Defendants regarding these services or any of

Defendants' Laundromats by calling one single phone number, "(212) 928-WASH", which can be found on the "Business Services" page on Defendants' website, https://www.msbubblegreen.com/business-services. *See* **Exhibit E**.

(h) Corporate Defendant EXCLUSIVE MANAGEMENT SOLUTION GROUP, INC. is included at the bottom of nearly every page on Defendants' website as "EMSG Inc." *See* **Exhibit B**.

15. Corporate Defendant EXCLUSIVE MANAGEMENT SOLUTION GROUP, INC. is a domestic business corporation organized under the laws of New York State with a principal place of business located at 1492 5th Avenue, New York, NY 10035 and a registered address for service of process at c/o Dmitry Berezovsky, 5385 Netherland Avenue, Bronx, NY 10471.

16. Individual Defendant DMITRIY BEREZOVSKY a/k/a DMITRY BEREZOVSKIY is the Owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant DMITRIY BEREZOVSKY exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant DMITRIY BEREZOVSKY has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant DMITRIY BEREZOVSKY additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual

Defendant DMITRIY BEREZOVSKY ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

17. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and the regulations thereunder.

18. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

19. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons, including, but not limited to laundry aides, laundry attendants, laundry housekeepers, laundry workers, ironers, steamers, and delivery persons, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them: (i) wages for all hours worked, including overtime, due to Defendants' policy of time-shaving and improper rounding, and (ii) overtime wages for hours worked over forty (40), due to Defendants' policy of issuing multiple paychecks per pay period . The claims of Plaintiffs stated

herein are essentially the same as those of FLSA Collective Plaintiffs.

22. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first-class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

23. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons, including, but not limited to laundry aides, laundry attendants, laundry housekeepers, laundry workers, ironers, steamers, and delivery persons, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

24. The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26. Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay proper wages, including overtime, due to a policy of time-shaving and improper rounding, (ii) failing to pay proper overtime wages, due to improper issuance of multiple paychecks per pay period, (iii) failing to spread of hours premiums, (iv) failing to pay call-in pay, (v) failing to pay wages in a timely manner in accordance with the NYLL, (vi) failing to provide proper wage statements per the requirements of the NYLL, and (vii) failing to provide proper wage and hour notices, at date of hiring and annually, per the requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

27. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and Class Members within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class Members for their work;

d) Whether Defendants properly notified Plaintiffs and Class Members of their regular hourly rate and overtime rate;

e) Whether Defendants properly compensated Plaintiffs and Class Members for all their hours worked;

f) Whether Defendants observed a policy of failing to pay Plaintiffs and Class Members all wages for all hours worked, including overtime, due to time shaving;

g) Whether Defendants failed to pay Plaintiffs and Class Members all wages for all hours worked, including overtime, due to improper rounding;

h) Whether Defendants failed to pay Plaintiffs and Class Members overtime wages for hours worked over forty (40), due to issuance of multiple checks per pay period;

i) Whether Defendants properly compensated Plaintiffs and Class Members with spread of hours premiums for shifts exceeding ten (10) hours in duration;

j) Whether Defendants properly compensated Plaintiffs and Class Members with their call-in pay for shifts lasting less than four (4) hours in duration;

k)  Whether Defendants paid Plaintiffs and Class Members their lawful wages in a timely manner as required by NYLL;

l)  Whether Defendants provided proper wage statements to Plaintiffs and Class Members per requirements of the New York Labor Law; and

m)  Whether Defendants provided proper wage and hour notices to Plaintiffs and Class Members, at date of hiring and annually, per requirements of the New York Labor Law.

## STATEMENT OF FACTS

Plaintiff HERLINDA FRANCISCO ("Plaintiff FRANCISCO")

32.  Plaintiff FRANCISCO was hired to work as an Ironer in or around May 2019 and worked until on or about September 2023 at Defendants' Laundromat, located at 1225 St Nicholas Ave, New York, NY 10032.

33.  The primary duties of Plaintiff FRANCISCO included, but were not limited to, ironing, separating and packing clothes, and dry cleaning.

34.  Plaintiff FRANCISCO worked five (5) days per week, Mondays through Fridays, for nine (9) hours per day, for a total of forty-five (45) hours per day, throughout her entire employment. Plaintiff FRANCISCO's schedule varied, and she was required to work from either 8:00 a.m. to 5:00 p.m., 9:00 a.m. to 6:00 p.m., or 10:00 a.m. to 7:00 p.m. on any given workday.

35.  Plaintiff FRANCISCO was paid $15.00 per hour from the start of her employment until in or about January 2023. At the time of her termination, Plaintiff FRANCISCO was paid $18.50 per hour at the end of her employment.

Plaintiff JAVIER BRAVO ("Plaintiff BRAVO")

36.  Plaintiff BRAVO was hired in 2021 and worked for approximately one (1) year until sometime in 2022.

37. Plaintiff BRAVO was employed as a delivery person, whose primary duties included, but were not limited to, making deliveries to Defendants' clients and Laundromats via motorbike or walking. During his downtime, Plaintiff BRAVO also had to wash, clean, and fold laundry, in addition to his delivery duties.

38. During his employment, Plaintiff BRAVO has worked at: (i) 1225 St Nicholas Ave, New York, NY 10032; (ii) 617 Lenox Ave, New York, NY 10037; (iii) 465 Lenox Ave, New York, NY 10037; and (iv) 1746 1st Ave., New York, NY 10128.

39. Plaintiff BRAVO was scheduled to work five (5) days per week, Monday through Friday, for ten (10) hours per day, from 11:00 a.m. to 9:00 p.m., for a total of fifty (50) hours per week, throughout his entire employment.

40. Plaintiff BRAVO was compensated at an hourly rate of $17.00 per hour throughout his entire employment.

41. At all relevant times, FLSA Collective Plaintiffs and Class Members had similar positions, duties, pay rates, and schedules to Plaintiffs.

_Plaintiffs' Time Shaving and Improper Rounding Claims:_

42. At all relevant times, Defendants knowingly and willfully subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to a policy of time shaving and rounding, in violation of the FLSA and the NYLL.

43. At all relevant times, Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members for all hours worked according to their punch records, and instead paid employees for scheduled shifts recorded on timesheets in hours that were rounded to the whole or half hour.

44. Defendants paid Plaintiffs, FLSA Collective Plaintiffs, and Class Members by their

scheduled in and out times and restricted them from writing down their actual clock in and clock out times, even though Defendants required employees to use a punch clock for each shift. As a result, Defendants subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to time shaving by failing to compensate them for all hours worked outside of their schedules.

45. Because of the abovementioned time shaving and rounding of hours to their scheduled shifts, Plaintiffs were time shaved approximately forty-five (45) minutes per day, every day throughout their employments. This is because Defendants required Plaintiffs to work approximately thirty (30) minutes before their scheduled shifts and approximately fifteen (15) minutes after their scheduled shifts, but only paid Plaintiffs for their scheduled hours, which were always rounded to the whole or half hour.

46. Defendants' time shaving policy was clearly intentional, as Defendants (i) recorded the hours worked by Plaintiffs, FLSA Collective Plaintiffs, and Class Members through both timeclock machines and timesheets, (ii) required them to handwrite only their scheduled hours and not their actual hours, and (iii) deliberately disregarded their actual, digitally recorded hours.

47. Defendants also time shaved FLSA Collective Plaintiffs and Class Members, by compensating employees on different checks associated with different Laundromats operated by Defendants, thereby avoiding paying overtime at a rate of 1.5 times their regular hourly rate for all hours worked over 40 in a workweek, in violation of the FLSA and the NYLL.

48. Plaintiff BRAVO was subjected to this particular unlawful practice. Throughout his entire employment, Plaintiff BRAVO worked approximately fifty (50) hours per week, across four (4) of Defendants' Laundromats. However, each week, Defendants deliberately failed to compensate Plaintiff BRAVO for all overtime hours at his proper overtime rate.

49. This is because, Defendants paid BRAVO in payments split between check and cash,

and further split the hours worked by Plaintiff BRAVO by location. Defendants' check payments would be for an amount of hours under forty (40) hours, and then Defendants compensated Plaintiff BRAVO for the rest of his weekly hours worked in cash. For example, one week, Defendants paid Plaintiff BRAVO for 50 hours of work through a check that covered 30 hours of work, and in a supplemental cash payment that covered the remaining 20 hours, with the check and cash payments split among the hours worked by Plaintiff BRAVO at different Laundromats. However, both payments would always be entirely calculated at Plaintiff BRAVO's regular hourly rate of $17.00 per hour, and never at the proper overtime rate of one and one-half his regular rate.

50. At all relevant times, Defendants intentionally and willfully subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to a policy of improper rounding, in violation of the FLSA and the NYLL.

51. At all relevant times, as set forth above, Defendants required Plaintiffs, FLSA Collective Plaintiffs, and Class Members to clock in and out on Defendants' timeclock machines every day. However, Defendants always detrimentally rounded Plaintiffs', FLSA Collective Plaintiffs', and Class Members' recorded clock in and out times down to their scheduled times, which were always on the nearest whole or half hour.

52. By improperly rounding down the time hours worked by Plaintiffs, FLSA Collective Plaintiffs, and Class Members, Defendants failed to pay all hours worked, despite employees being required to always work up to thirty (30) minutes before their scheduled shifts and approximately fifteen (15) minutes after their shifts ended.

*Plaintiffs' Unpaid Spread of Hours Premiums Claims:*

53. At all relevant times, Defendants intentionally and willfully subjected Plaintiffs and Class Members to a policy of failing to pay them spread of hours premiums for their days worked

with a spread of ten (10) or more hours, in violation of the NYLL.

54. Throughout their employments, Plaintiffs were regularly required by Defendants to work days with a spread of ten (10) or more hours as follows: Plaintiff FRANCISCO was scheduled to always work at least nine (9) hours per day, and was regularly required to additionally work one (1) or more hour; Plaintiff BRAVO was scheduled to work at least ten (10) hours per day, every day throughout his employment.

55. Class Members were similarly regularly required by Defendants to work shifts with a spread of ten (10) or more hours.

56. Despite requiring Plaintiffs and Class Members to work shifts with a spread of ten (10) or more hours, Defendants always failed to pay spread of hours premiums to Plaintiffs and Class Members for these work shifts.

57. Defendants' failure to pay spread of hours premiums to Plaintiffs and Class Members was clearly intentional. Defendants knew Plaintiffs and Class Members were working shifts lasting up to ten (10) or more hours because Defendants were the ones to require such amounts of work. Despite this, Defendants intentionally disregarded their requirement to pay spread of hours premiums to Plaintiffs and Class Members for these shifts.

*Plaintiffs' Unpaid Call-in Pay Claims:*

58. At all relevant times, Defendants intentionally and willfully failed to pay Plaintiffs and Class Members for call-in pay for shifts worked under four (4) hours, in violation of the NYLL.

59. Throughout Plaintiffs' employments, Defendants would send Plaintiffs home early without justification. This always happened when Plaintiffs were approximately only two (2) hours into a seven (7) or more hour shift.

60. Despite Defendants requiring Plaintiffs to arrive to work for a full shift and sending

them home before they worked four (4) hours on these days, Defendants failed to pay call-in pay to Plaintiffs for these days.

61. Defendants similarly failed to pay call-in pay to Class Members who were sent home early between 0 and 4 hours into their shifts, in violation of the NYLL.

62. Defendants' failure to pay call-in pay was clearly intentional. Defendants knew these employees were arriving to work and working under four (4) hours for these days as Defendants scheduled these employees to come in for work and deliberately sent them home early on certain days. Despite this, Defendants failed to pay call-in pay to Plaintiffs and Class Members.

*Plaintiffs' Late Payment of Wages Claims:*

63. At all relevant times, Defendants intentionally and willfully failed to pay Plaintiffs and Class Members in a timely manner, in violation of the NYLL.

64. At all relevant times, Plaintiffs and Class Members spent more than 25% of their shift performing duties that require manual labor. Plaintiff FRANCISCO's duties involved ironing, separating and packing clothes, and dry cleaning, among other tasks. Plaintiff BRAVO's duties involved making deliveries to Defendants' clients and Laundromats via motorbike or walking, washing, cleaning, and doing laundry, among other tasks. Clearly, Plaintiffs' positions and duties involved physical labor for the most part which qualifies them as  manual laborers under the NYLL. As such, Plaintiffs were required to be compensated within seven (7) days of the end of the week in which they earned them pursuant to the NYLL. Similarly, Class Members were manual laborers who spent more than 25% of their working time engaged in "physical labor" and must be compensated within seven (7) days of the end of the week in which they earned them.

65. Throughout Plaintiffs' employment, Defendants failed to pay Plaintiffs their wages in a timely manner in violation of the NYLL. Defendants regularly paid the Plaintiffs their wages up

to three (3) days late from the required time frame. Similarly, Class Members were paid late in violation of the NYLL.

66. Defendants' failure to pay in a timely manner is intentional. Defendants knew the required pay dates as they set their payroll policies. Despite this, Defendants failed to pay Plaintiffs and Class Members within seven (7) days of the end of the week in which they earned them.

_Plaintiffs' Fraudulent Filing and Unjust Enrichment Claims:_

67. At all relevant times, Defendants intentionally and willfully subjected Plaintiffs, FLSA Collective Plaintiffs, and Class Members to (i) a policy of filing fraudulent tax information on their behalf, in violation of FICA, and (ii) a policy of unjustly enriching themselves at the expense of Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in violation of New York law.

68. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were compensated by Defendants in both cash and personal checks. Throughout her employment, Plaintiff FRANCISCO was paid by Defendants at $300.00 in personal check and the remainder in cash every week. Plaintiff BRAVO was paid in both cash and personal checks throughout his employment.

69. As a result of Defendants' paying Plaintiffs, FLSA Collective Plaintiffs, and Class Members in cash and personal checks, Defendants failed to provide Plaintiffs, FLSA Collective Plaintiffs, and Class Members with accurate IRS Forms W-2 for all the tax years of their employments and failed to properly record, account for, and report to the IRS all monies paid to Plaintiffs, FLSA Collective Plaintiffs, and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable to Plaintiffs, FLSA Collective Plaintiffs, and Class Members for at least five thousand dollars per each fraudulent filing, which would have to

be at least once per year.

70. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contracts with Plaintiffs and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

71. Defendants also unjustly enriched themselves at the expense of Plaintiffs and Class Members by retaining monies that should have been remitted to the IRS on Plaintiffs' and Class Members' behalf.

72. As a result, Plaintiffs and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

73. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

74. Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portions of their wages.

*Plaintiffs' WTPA Claims:*

75. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and Class Members with proper wage notices or wage statements in violation of the NYLL. Defendants failed to provide proper wage statements because Defendants paid Plaintiffs and Class Members by cash and personal checks.

76. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> "Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights."

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

77. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

78. Had Defendants provided any wage statements to Plaintiffs and Class Members accurately listing the total number of hours Plaintiffs and Class Members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked, or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiffs and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

79. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

80. The direct effect of failing to state the number of hours an employee worked and the corresponding proper pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service realcheckstubs explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data.

81. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

82. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

83. Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary

---

Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

injury. Had the number of hours and pay rates been reported for a given pay period, Defendants would have been forced to increase the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the omission prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

84. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> "The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3-4 (N.D. Ill. July 8, 2011).

85. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiffs and Class Members lost benefits by virtue of how Defendants reported their incomes, and how Defendants reported employees' incomes was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

86. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

87. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

88. Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report portions of what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were (i) underpaid and (ii) partially or wholly compensated in cash and personal check. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

89. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs and FLSA Collective Plaintiffs in this litigation, and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

90. Plaintiffs reallege and reaver the all the foregoing allegations in this Class and Collective Action Complaint as if fully set forth herein.

91. At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

92. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

93. Upon information and belief, at all relevant times Corporate Defendants had gross revenues in excess of $500,000.

94. At all relevant times, Defendants had a policy and practice of failing to pay wages to Plaintiffs and FLSA Collective Plaintiffs for all regular and overtime hours worked due to time shaving and improper rounding.

95. At all relevant times, Defendants had a policy and practice of failing to pay wages to Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked due to issuance of multiple paychecks per pay period.

96. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA

Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs, are in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

97. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all of Plaintiffs' and FLSA Collective Plaintiffs' hours worked.

98. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

99. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to recover liquidated damages pursuant to the FLSA.

100.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid overtime wages, plus an equal amount as liquidated damages.

101.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

102.    Plaintiffs reallege and reaver the all the foregoing allegations in this Class and Collective Action Complaint as if fully set forth herein.

103.    At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

104.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them the proper compensation for all hours worked due to a policy of time-shaving and improper rounding, in direct violation of the NYLL.

105.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them the proper compensation for all overtime hours worked due to a policy of issuing multiple paychecks per pay period, in direct violation of the NYLL.

106.    Defendants failed to compensate Plaintiffs and Class Members with their spread of hours premiums for their shifts worked in excess of 10 hours, in direct violation of the NYLL.

107.    Defendants failed to compensate Plaintiffs and Class Members with their call-in pay for days worked less than four hours, in direct violation of the NYLL.

108.    At all relevant times, Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

109.    Defendants knowingly and willfully failed to provide proper wage notices to Plaintiffs and Class members as required by NYLL § 195(3).

110.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by NYLL § 195(3).

111.    Due to Defendants' New York Labor Law violations, Plaintiffs and Class Members are entitled to recover from Defendants their unpaid wages, unpaid overtime wages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS**

**UNDER THE INTERNAL REVENUE CODE, 26 U.S.C. § 7434(a)**

112.    Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

113.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

114.    By failing to provide Plaintiffs and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs and Class Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

115.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

116.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiffs for reasonable attorneys' fees.

**COUNT IV**

**BREACH OF CONTRACT**

117.    Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

118.    "In New York, all contracts imply a covenant of good faith and fair dealing in the

course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

119.    When Plaintiffs and Class Members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiffs and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

120.    Defendants breached this duty when they paid Plaintiffs and Class Members in cash and personal checks and failed to file proper W-2's. As a result, Plaintiffs and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

<u>**COUNT V**</u>

<u>**UNJUST ENRICHMENT**</u>

121.    Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

122.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations

omitted).

123.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiffs and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

124.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiffs and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant relief as follows:

a.  A preliminary and permanent injunction to prohibit Defendants from violating the FLSA, NYLL, IRC, FICA, and New York law;

b.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, IRC, FICA, and New York law;

c.  Appropriate equitable and injunctive relief to remedy Defendants' violations of federal law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

d.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

e.  An award of unpaid wages, including overtime, due to time shaving and improper rounding, due under the FLSA and the NYLL;

f.  An award of unpaid overtime, due to issuance of multiple paychecks per pay period, due under the FLSA and the NYLL;

g.  An award of unpaid spread of hours premiums, due under the NYLL;

h.  An award of unpaid call-in pay, due under the NYLL;

i.  An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

j.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiffs' and Class Members' retirement through FICA contributions;

k.  Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiffs' and Class Members' FICA contributions;

l.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the NYLL;

m.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

n.  An award of economic damages, compensatory damages, and punitive damages, due under the FLSA and the NYLL;

o.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

p.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

q.  Designation of this action as a class action pursuant to F.R.C.P. 23;

r.   Designation of Plaintiffs as Representatives of the Class;

s.   Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class Members, and the risks they have taken and will take in representing the Class; and

t.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, demands a trial by jury on all issues so triable as of right by jury.

Dated: May 21, 2024                         Respectfully submitted,
       New York, NY              By:    */s/ C.K. Lee*
                                        C.K. Lee, Esq. (CL 4086)

                                        **LEE LITIGATION GROUP, PLLC**
                                        148 W 24th St., 8th Floor
                                        New York, NY 10016
                                        Tel.: (212) 465-1188
                                        Fax: (212) 465-1181
                                        *Attorneys for Plaintiffs,*
                                        *FLSA Collective Plaintiffs,*
                                        *and Class Members*