UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HERLINDA FRANCISCO and JAVIER :
BRAVO *on behalf of themselves*, *FLSA* :
*Collective Plaintiffs, and the Class,* :
                                         :
                         Plaintiffs,     :        24-CV-3928 (AT) (RWL)
                                         :
            - against -                  :
                                         :        **REPORT AND RECOMMENDATION**
EXCLUSIVE MANAGEMENT SOLUTION :                   **TO HON. ANALISA TORRES:**
GROUP, INC., JOHN DOE                    :        **<u>MOTION TO DISMISS (Dkt. 34)</u>**
CORPORATIONS 1 – 50, and DMITRIY         :
BEREZOVSKY *a/k/a* DMITRY                :
BEREZOVSKIY,                             :
                         Defendants.     :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs Herlinda Francisco and Javier Bravo (together, "Plaintiffs"), on behalf of

themselves and other similarly situated, bring this collective and putative class action

against their former employers, Exclusive Management Solution Group, Inc. ("EMSG),

and John Doe Corporations 1 – 50 (together, "Corporate Defendants"), as well as Dmitriy

Berezovsky (a/k/a Dmitry Berezovskiy) (collectively, "Defendants").   Plaintiffs allege

violations of the Fair Labor Standards Act ("FLSA"), 26 U.S.C. § 7434, and the New York

Labor Law ("NYLL") §§ 191(1)(a)(i), 195(1), and 195(3). Plaintiffs additionally assert

common-law claims for breach of contract and unjust enrichment.   Pursuant to Federal

Rule of Civil Procedure 12(b)(6), Defendants now move to dismiss with prejudice all of

Plaintiffs' claims arising under the FLSA, some of Plaintiffs' claims arising under the

NYLL, and Plaintiffs' common law claims.   For the reasons set forth below, the Court

recommends that Defendants' motion be DENIED in part and GRANTED in part.

# FACTUAL BACKGROUND[1]

## A.    Defendants

EMSG owns and operates a laundromat chain with 28 locations throughout New York City.  (FAC ¶¶ 13, 15.)  EMSG is owned and operated by Berezovsky.  (*Id.* ¶ 16.)  The laundromats share employees, payroll systems, and wage and hours policies.  (*Id.* ¶¶ 15, 41.)   The laundromats are advertised on a shared website, https://www.msbubblegreen.com (the "Website").  (*Id.* ¶ 14.)  The Website lists a single phone number for inquiries regarding any of the laundromats advertised.  (*Id.* ¶ 16.)  The laundromats also share a page on the Website detailing the prices of their services.  (*Id.*)  When scheduling laundry pick-up and delivery, customers on the Website do not choose which location will perform these services, but instead enter their address, and Defendants identify which location will be made available.  (*Id.*)

Berezovsky personally manages the laundromats and is frequently onsite directing laundromat employees.  (*Id.*)  Berezovsky has ultimate authority over the laundromats' workforce and the terms of their employment, including hours, pay, locations serviced, and employee records.  (*Id.* ¶ 19.)

## B.    Plaintiffs

Francisco was hired in or around May 2019 and worked until or about September 2023 at Defendants' laundromat located at 1225 St. Nicholas Ave, New York, NY 10032.

---

[1] The facts are derived from the First Amended Complaint ("FAC," Dkt. 30), as well as statements and documents attached to or incorporated by reference into the First Amended Complaint.  *See Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).  In accordance with the standard for a motion to dismiss for failure to state a claim, the Court accepts all well-pled allegations as true and draws all reasonable inferences in favor of Plaintiffs.  *See Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014).

(FAC ¶ 35.)  Francisco's primary job duties included ironing, separating and packing clothes, and dry cleaning.  (*Id.* ¶ 36.)  Francisco's work schedule fluctuated, but she generally worked Monday to Friday for 9 hours per day, or 45 hours per week.  (*Id.* ¶ 37.) The FAC details Francisco's schedule for two specific weeks (ending in February 6, 2023, and in April 23, 2023) in which Francisco was scheduled to work 40 hours and 35 minutes, and 50 hours and 30 minutes, respectively.  (*Id.*)  Francisco was paid $15.00 per hour from May 2019 until about January 2023, and subsequently a rate of $18.50 per hour until the end of her employment.  (*Id.* ¶ 38.)

Bravo was hired sometime in 2021 and worked for Defendants for approximately one year.  (*Id.* ¶ 39.)  Bravo primarily delivered laundry and occasionally washed and folded laundry as well.  (*Id.* ¶ 40.)  Bravo worked at three separate EMSG locations and was transferred among those locations on an as-needed basis.  (*Id.* ¶ 41.)  Bravo worked Monday to Friday, from 11:00 AM to 9:00 PM, or 50 hours per week, and was paid $17.00 per hour.  (*Id.* ¶ 42-43.)

## C.    **Wage Violations**

Plaintiffs allege an array of wage-and-hour violations, including "time shaving" and failure to pay overtime; failure to pay spread of hours premiums; failure to pay "call-in" pay; and failure to pay on a regular weekly basis.

Throughout their employment, Defendants required Plaintiffs to work additional time before and after their daily scheduled shifts for which they were not paid, a practice Plaintiffs identify as "time shaving."  (FAC ¶ 45, 47.)  Plaintiffs allege they were "time shaved" approximately 45 minutes of work per day, or 3.75 hours per week.  (*Id.* ¶ 47.) This time shaving not only deprived Plaintiffs of wages for the extra hours worked but also reduced or eliminated hours for which they should have been paid an overtime rate.  (*Id.*

¶ 49.)  As representative examples, Francisco alleges two specific instances in which the time that was "shaved" occurred during weeks where she was scheduled to work more than 40 hours, and thus would have been compensated at an overtime rate.  (*Id.*)  Bravo states that because he was scheduled to work at least 50 hours during every week of his employment, he should have been paid at the overtime rate for all of the time shaved from his actual work hours.  (*See id.*  ¶¶ 42, 49.)

Bravo additionally alleges that Defendants compensated him in multiple paychecks in a given pay period based on the specific locations at which Bravo worked to avoid compensating him at an overtime rate for the hours worked in excess of 40 each week.  (*Id.* ¶ 52.)  For example, Bravo alleges one instance of being paid for 50 hours of work, with 30 hours allocated to one EMSG location and 20 hours to another EMSG location on separate paychecks.  (*Id.*)  All 50 hours were paid at his regular, non-overtime rate.  (*Id.*)

Defendants allegedly failed to pay Plaintiffs spread-of-hours premiums.  (*Id.* ¶ 54.) "[U]nder the NYLL, for each day that an employee works over an interval exceeding ten hours, the employee is entitled to an additional hour of pay at the minimum wage." *Romero v. Anjdev Enterprises, Inc.*, No. 14-CV-457, 2017 WL 548216, at *9 (S.D.N.Y. Feb. 10, 2017) (Torres, J.).  Bravo worked shifts of 10 or more hours daily, while Francisco alleges a specific week (ending in April 23, 2023), in which she worked 11 hours on Monday and 10.5 hours on Tuesday.  (FAC ¶ 55.)

Defendants also failed to pay Plaintiffs "call-in pay" for shifts that lasted less than four hours.  (*Id.* ¶ 59.)  New York's call-in pay regulation provides:  "An employee who by request or permission of the employer reports for work on any day shall be paid for at

least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage." 12 NYCRR § 142-2.3. According to the FAC, Defendants would "regularly" send Plaintiffs home early without warning, approximately two hours into a seven (or more) hour shift but not pay them for a full four hours. (FAC ¶¶ 59-60.) Francisco alleges this occurred on January 2, 2023; Bravo alleges he had "similar experiences." (*Id.* ¶ 60.)

Plaintiffs spent more than 25% of their shift performing duties that require manual labor; Francisco's duties involved ironing, separating and packing clothes, and dry cleaning, and Bravo's duties included making deliveries and washing clothes. (*Id.* ¶ 65.) "The NYLL provides that a manual worker is required to be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." *Ramirez v. Urion Construction LLC*, 674 F. Supp.3d 42, 52 (S.D.N.Y. 2023) (citing NYLL § 191(1)(a)(i)). Throughout Plaintiffs' employment, Defendants allegedly failed to pay Plaintiffs' wages within seven days of the end of the week in which they earned them. (FAC ¶ 66.) Instead, Plaintiffs were "regularly" paid up to 10 days after the end of the week in which they earned their wages. (*Id.*)

## D. Tax Documents

Plaintiffs claim that throughout their employment they were paid both in cash and by personal check. (FAC ¶ 69.) Despite this practice, the 1099 and W-2 forms filed by Defendants with the Internal Revenue Service (IRS) included only the compensation which was paid to Plaintiffs through checks, and not the compensation which was paid in cash. (*Id.* ¶ 70.)

### E.    Wage Notices And Statements

Plaintiffs did not receive accurate wage notices and paystubs listing all hours Plaintiffs actually worked and the corresponding rates of pay, including overtime hours and overtime rates.  (FAC ¶ 80.)  As a result, Plaintiffs were unable to contest the inadequacy of the pay they were provided.  (*Id.*)

PROCEDURAL BACKGROUND

Plaintiffs commenced this action on May 21, 2024.  (Dkt. 1.)  They filed the FAC on October 4, 2024.  (Dkt. 30.)  On November 1, 2024, Defendants moved to dismiss the FAC, filing a memorandum of law ("Mem.," Dkt. 34-2), and a declaration from Berezovsky (Dkt. 34-1).[2]  Plaintiffs filed their opposition on November 22, 2024 ("Opp.," Dkt. 37), and Defendants filed a reply on December 6, 2024 ("Reply," Dkt. 40).  The case has been referred to me for general pretrial purposes, and report and recommendation on Defendants' motion to dismiss.  (Dkt. 42.)

The Court has federal subject matter jurisdiction by virtue of the FLSA claims.  *See* 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the NYLL claims and state common-law claims, which share the same common nucleus of operative facts as Plaintiffs' FLSA claims.  *See* 28 U.S.C. § 1367.

---

[2] The Court does not consider Berezovsky's declaration for purposes of Defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim as it is evidentiary material outside the pleadings and which is neither referenced in nor otherwise integral to the First Amended Complaint.  *See* Fed. R. Civ. P. 12(d); *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 202 (2d Cir. 2013); *MiMedx Group, Inc. v. Sparrow Fund Management LP*, No. 17-CV-7568, 2018 WL 847014, at *4 (S.D.N.Y. Jan. 12, 2018), *R. & R. adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018).

**DEFENDANTS' MOTION TO DISMISS**

Defendants argue that Plaintiffs' claims of unpaid overtime pay, unpaid call-in pay, fraudulent tax filings, breach of contract, and unjust enrichment fail to state a claim and thus should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Additionally, Defendants argue that Plaintiffs' claims under NYLL §§ 195(1) and 195(3) for failing to provide proper wage notices and statements should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of standing.[3] For the reasons discussed below, the Court recommends dismissal of Plaintiffs' claims only for unpaid call-in pay, breach of contract, and unjust enrichment.

**LEGAL STANDARDS**

**A.    Lack Of Subject Matter Jurisdiction**

Under Rule 12(b)(1), a pleading may be dismissed for lack of subject matter jurisdiction. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transportation System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion to dismiss, the Court

---

[3] Defendants' moving and reply briefs do not address Plaintiffs' claims for unpaid spread-of-hours pay or late payment of wages. Accordingly, the Court does not consider those claims in the instant Report and Recommendation. Defendants' notice of motion states that Defendants move to dismiss for "failure to state a claim upon which relief can be granted, all especially given the conclusive and undeniable documentary evidence." (Dkt. 34 at 1.) Even if the Court construes the notice as encompassing "all" causes of action, the Court does not address the spread-of-hours and time-of-payment issues given Defendants' failure to brief any argument for dismissing those claims. *See Agosto v. Correctional Officers Benevolent Association*, 107 F. Supp.2d 294, 311 (S.D.N.Y. 2000) ("Although [defendant] moved to dismiss [plaintiff]'s entire complaint, it has not described the basis for dismissal of [several claims], and therefore, the Court does not reach those claims"); *McClemore v. Bosco*, No. 14-CV-626, 2016 WL 11480172, at *4 n.3 (N.D.N.Y Feb. 16, 2016) ("Although defendants' motion requests dismissal of plaintiff's complaint in its entirely, it does not address [one of the] claim[s] … asserted. … Accordingly, … [the court] will not discuss that particular cause of action").

"must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869 (2010). Additionally, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings").

## B.    Failure To State A Claim

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court "accept[s] all material facts alleged in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Lotes Co.*, 753 F.3d at 403 (internal quotation marks and citation omitted). However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[R]ather, the complaint's 'factual allegations must be enough to

raise a right to relief above the speculative level,' *i.e.*, enough to make the claim 'plausible.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (brackets omitted) (quoting *Twombly*, 550 U.S. at 555, 570). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

Unlike on a motion to dismiss for lack of subject matter jurisdiction, the Court may not consider affidavits and other material not incorporated into the complaint on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d); *Nakahata*, 723 F.3d at 202.

## DISCUSSION

The Court discusses the issues in the following order. First, it considers Defendants' arguments that Plaintiffs do not satisfy the threshold requirements for asserting any claims under the FLSA and that the 28 laundromats are not a single integrated enterprise. Second, the Court considers Defendants' arguments that Plaintiffs have not stated causes of action for certain of their wage-and-hour claims; namely, time-shaving and failure to pay overtime as required by both the FLSA and NYLL. Third, the Court assesses Plaintiffs' claim that Defendants filed fraudulent IRS documents. That is followed by consideration of whether Plaintiffs have standing to assert claims for violation of the NYLL wage notice and statement provisions. Finally, the Court notes Plaintiffs' abandonment of their claims for call-in pay, breach of contract, and unjust enrichment.

## A.    Plaintiffs Satisfy The Threshold Requirements For Their FLSA Claims

To establish a claim under the FLSA, a plaintiff must first demonstrate that they were employed by the defendant and that defendant was engaged in interstate commerce. *See Bao v. Sunwoo Trade Inc.*, No. 20-CV-9588, 2022 WL 4357867, at *5

(S.D.N.Y. Sept. 20, 2022); *Garcia-Devargas v. Maino*, No. 15-CV-2285, 2017 WL 129123, at *4 (S.D.N.Y. Jan. 13, 2017), *R. & R. adopted*, 2017 WL 11567211 (S.D.N.Y. March 29, 2017); *Allison v. Clos-ette Too, LLC*, No. 14-CV-1618, 2014 WL 4996358, at *9 (S.D.N.Y. Sept. 15, 2014), *R. & R. adopted*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014). Where, as here, a plaintiff claims that nominally separate entities – in this instance the 28 laundromats – are jointly liable as the plaintiff's employer, the plaintiff must allege that a single defendant operated all the entities as a single integrated enterprise. *See Ramirez v. Devoe Grocery Store Inc.*, No. 19-CV-563, 2020 WL 13997207, at *4 (S.D.N.Y. July 20, 2020), *R. & R. adopted*, 2020 WL 13997206 (S.D.N.Y. Oct. 2, 2020) (Torres, J.); *Goldman v. Sol Goldman Investments, LLC*, 559 F. Supp.3d 238, 242 (S.D.N.Y. 2021).

### 1.    Interstate Commerce

The interstate commerce requirement, 29 U.S.C. § 203(b), can be met on either an individual or enterprise basis. *Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, No. 14-CV-580, 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015). An enterprise is "engaged in commerce or in the production of goods for commerce" if (1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," *and* (2) its "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Plaintiffs allege facts sufficient to meet the interstate commerce requirement. They claim that "laundry detergent and fabric softeners used at each of Defendants' laundromats were imported from out of state. So, too, were the washing machines and dryers." (FAC ¶ 9); *see Galindo v. Yummy Foods Deli Corp.*, No. 21-CV-45, 2024 WL 947283, at *8 (S.D.N.Y. Jan. 17, 2024) (interstate commerce requirement satisfied where

plaintiffs "plausibly alleged that … numerous items that were used in the [business] on a daily basis were goods produced outside of the State of New York") (brackets omitted), *R. & R. adopted*, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024); *Amaya v. Buildsmart LLC*, No. 21-CV-6378, 2023 WL 4108872, at *9 (S.D.N.Y. Jan. 31, 2023) ("Local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce") (internal quotation marks, brackets, and citation omitted), *R. & R. adopted*, 2023 WL 4106480 (S.D.N.Y. June 21, 2023).

Plaintiffs also satisfy the monetary threshold.  Plaintiff Francisco worked at a single laundromat location, while Plaintiff Bravo worked at four laundromat locations.  They estimate, based on their direct observations of the daily volume of business at the laundromats at which they worked, that Defendants' annual gross volume of sales is "in the many millions of dollars."  (FAC ¶ 10.)  At the motion to dismiss stage, these allegations satisfy the FLSA's interstate commerce requirement.  *See, e.g.*, *Pinheiro v. Interior Mogul LLC*, No. 22-CV-9856, 2024 WL 4716346, at *3 (S.D.N.Y. Aug. 28, 2024) (finding plaintiff's "observations [of transactions] and knowledge of the value" of services sufficient to establish defendant engaged in interstate commerce under the FLSA). Moreover, as discussed below, the Court finds that Defendants' 28 laundromats operated as a single integrated enterprise.  Given Plaintiffs' observations based on the handful of laundromats at which they worked, it is plausible to infer that the revenue of all 28 laundromats taken together readily exceeds the $500,000 threshold.  *See Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406, 2022 WL 3152572, at *3 (S.D.N.Y. Aug. 8, 2022) ("[since defendants] operated as a single integrated enterprise, … their annual sales

would be aggregated for purposes of the FLSA") (citing *Yu Wei Cao v. Miyama, Inc.*, No. 15-CV-266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019) (aggregating gross annual revenues of defendant corporations that formed a single integrated enterprise)).

### 2.    Single Integrated Enterprise/Employer

Plaintiffs claim that Berezovsky and EMSG own and operate the 28 laundromats advertised on the Website as a single integrated enterprise.  (FAC ¶ 16.)  Defendants reject this contention and argue that Plaintiffs' only employers are the individual laundromats at which they actually worked.  (Mem. at 5-8.)  Accordingly, Defendants argue that Plaintiffs' claims against any other laundromats, as well as the named Defendants, should be dismissed.  (*Id.*)

"The single employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."  *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (internal quotation marks and citation omitted).  The Second Circuit has recognized that motions to dismiss are rarely the appropriate stage to conclusively answer the single employer question, as these are "generally ... question[s] of fact not suitable to resolution" on the pleadings alone.  *Brown v. Daikin America Inc.*, 756 F.3d 219, 226 (2d Cir. 2014).

Although the Second Circuit has not opined on application of the single integrated employer doctrine to an FLSA claim, "courts in the Circuit have found sufficient support for its application in the breadth of the FLSA's definition of an employer and the Second Circuit's interpretation thereof."  *Syed v. S & P Pharmacy Corp.*, No. 21-CV-6000, 2023 WL 2614212, at *2 (E.D.N.Y. March 23, 2023) (internal quotation marks omitted) (quoting

*Flores v. 201 W. 103 Corp.*, 256 F. Supp.3d 433, 440 (S.D.N.Y. 2017)); *see also Neor v. Acacia Network, Inc.*, No. 22-CV-4814, 2025 WL 958583, at *4 (S.D.N.Y. March 31, 2025) (applying single integrated employer doctrine to FLSA claims); *Chen v. TYT East Corp.*, No. 10-CV-5288, 2012 WL 5871617, at *3 (S.D.N.Y. March 21, 2012) (noting the "shared policy concerns underlying the single employer doctrine and the FLSA" strongly imply the applicability of the doctrine to FLSA claims).

To determine whether multiple entities form a single integrated enterprise, courts generally consider four factors: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018, 2019 WL 633355, at *6 (S.D.N.Y. Feb. 14, 2019). "Although no one factor is determinative," and, indeed, not all four factors are required, "control of labor relations is the central concern." *Brown*, 756 F.3d at 227.

Plaintiffs' allegations are more than sufficient to plausibly assert that EMSG and the individual laundromats are a single integrated enterprise. Accepting the well-pled allegations as true, Berezovsky and EMSG, together, own all 28 of the laundromats named on the Website. (FAC ¶ 16.) The Website lists a single phone number for contacting any of the 28 locations, lists one set of prices and business services applying to all of the laundromats, and includes the name "EMSG Inc." at the bottom of nearly every one of its webpages. (*Id.*) When requesting a laundry delivery service, a customer is unable to select which location will perform this service – the choice is instead made by Defendants, based on the delivery or pickup address provided by the customer. (*Id.*) Defendants routinely transferred employees from one location to another on an as-needed basis, without designating the new locations as the employees' new formal

employers.  (*See id.* ¶¶ 15, 41, 50.)  The Laundromats share a common payroll system, as well as common wage and hour policies.  (*Id.* ¶ 15.)  For his part, Berezovksy, is EMSG's President and owns and operates EMSG and the other Corporate Defendants.[4] (*Id.* ¶ 16.)

Those allegations are sufficient to plausibly allege the existence of a single integrated enterprise, comprising the 28 named laundromats, and operated by Berezovsky and EMSG.  *See Morales v. Anyelisa Restaurant Corp.*, No 18-CV-7641, 2019 WL 3430106, at *3 (S.D.N.Y. July 30, 2019) (finding a single integrated enterprise where there were "centralized … payroll operations," "common wage and hour policies," and "employees [were] interchangeable"); *Flores*, 256 F. Supp.3d at 442 ("facts that go

---

[4] The Court does not read Defendants' motion to explicitly challenge Berezovsky's status as Plaintiffs' employer.  Even if it does, Plaintiffs plausibly plead that Berezovsky is Plaintiffs' employer. The Second Circuit has established a four-factor test to determine whether there is an employer-employee relationship under the FLSA.  *See Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).  The *Carter* test considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotation marks and citation omitted).

In addition to alleging that Berezovsky is EMSG's President and owns and operates EMSG and the other Corporate Defendants, the FAC alleges that Berezovsky established his presence at each of the locations at which Plaintiffs worked; that Berezovsky managed operations at those locations; that Berezovsky directed Plaintiffs and other employees, including managers hired by Berezovsky, on their duties; and that Berezovsky had full control over Plaintiffs' rates of pay, methods of pay, hours and schedule, and ultimate employment status.  (FAC ¶ 16.)  Even if somewhat conclusory, Plaintiffs' allegations plausibly plead that Berezovsky is an employer of the Plaintiffs.  *See Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 431 (1973) (explaining that the FLSA's definition of "employer" is "expansive"); *Compagnone v. MJ Licensing Co.*, No. 18-CV-6227, 2019 WL 1953931, at *3 (S.D.N.Y. May 2, 2019) (denying motion to dismiss for failure to plead employer-employee relationship where plaintiff alleged that defendants exercised "significant control" over his work because "[w]hile some of the language is 'boilerplate,' at this stage the allegations ... need only be plausible and the Court simply must be able to make a reasonable inference that [d]efendants were [p]laintiff's employers").

to the existence of a single, integrated enterprise include ... the use of the same employees at multiple locations; … [and] use of the same central payroll office"). The facts set forth in the complaint speak to the requisite interrelation of operations, centralized control of labor, and common ownership and management required to establish a single integrated enterprise. Plaintiffs have alleged sufficient facts to survive a motion to dismiss. *See Morales*, 2019 WL 3430106, at *3.

**B.    Plaintiffs Plausibly Allege Failure To Pay Overtime**

Both the FLSA and NYLL require employers to pay covered employees an overtime premium for every hour worked in excess of 40 hours per week. The FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *see Lahcen v. Kiran Park Newsstand Inc.*, No. 11-CV-5998, 2014 WL 3887222, at *4 (S.D.N.Y. Aug. 7, 2014) (noting requirement to pay "time-and-a-half" for "hours worked in excess of forty hours in a workweek"); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *6 (S.D.N.Y. May 14, 2012) ("If an employee demonstrates that he has worked more than 40 hours per week, he is entitled to recover the overtime rate for any hours in excess of 40"). New York law is similar, providing that employers are to pay employees "a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4; *see also Nakahata*, 723 F.3d at 200.

Simply put, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health System of Long Island Inc.*, 711

F.3d 106, 114 (2d Cir. 2013).  A plaintiff thus must provide "sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata*, 723 F.3d at 201. Successful pleading of an overtime claim does not demand a precise estimation of all hours that Plaintiffs worked, but rather "require[s] plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'"  *Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).  The same requirements apply to overtime claims under the NYLL.  *See* NYLL § 663; *Lundy*, 711 F.3d at 118 (stating that "the same standard applie[s] to the FLSA and NYLL claims").

Plaintiffs have satisfied their burden.  First, both Francisco and Bravo allege that they worked in excess of 40 hours per week and were regularly subject to time-shaving of 45 minutes per day.  (FAC ¶¶ 37, 42, 47-48.)  In other words, they regularly were not paid any wages, let alone time-and-a-half, for 3.75 hours each week.  The FAC details two specific weeks in which that happened to Francisco and alleges that those weeks were representative of her other work weeks.  (*Id.* ¶¶ 37, 47, 49.)  Although he does not provide examples, Bravo alleges that he suffered the same daily practice of time-shaving, and that this unpaid time invariably qualified for FLSA overtime coverage, given that he worked more than 40 hours a week throughout his employment.  (*Id.* ¶¶ 42, 47.)  Bravo also claims that he was deprived of overtime pay as a result of Defendants' check-splitting practices.  (*Id.* ¶¶ 50-52.)  Bravo was paid on separate checks for the same work week, each check individually reflecting less than 40 hours of week paid at the regular rate of pay, but together totaling more than the 40 hours for which he was scheduled.  (*Id.*)  The FAC describes a particular instance in which he received a check for 30 hours of work,

16

and a separate check for 20 hours of work the same week but was paid at the regular rate of pay for all 50 hours.  (*Id.* ¶ 52.)

To be sure, Francisco and Bravo's allegations are somewhat conclusory.  But they are more than sufficient.  As the Second Circuit recently noted in reversing a district court's dismissal of overtime claims, plaintiffs do "not need to provide detail indicating how often [they] worked more than forty hours in a week, how many additional hours [they] worked in a week, or which tasks [they] performed outside of [their] scheduled hours." *Spiegel v. Estée Lauder Inc.*, No. 24-2089, 2025 WL 1288019, at *2 (2d Cir. May 5, 2025) (summary order) (internal quotation marks omitted).  Rather, "the pleading standard is satisfied 'if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work.'"  *Id.* (quoting *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 116 (2d Cir. 2023)).

Moreover, by providing details about particular weeks, Plaintiffs have plausibly asserted violations for at least those weeks.  That is enough to pass muster under the standards for a motion to dismiss.  *See Tanski v. AvalonBay Communities, Inc.*, No. 15-CV-6260, 2016 WL 8711203, at *9 (E.D.N.Y Sept. 30, 2016) ("As courts in this Circuit have ... observed, all that is required under *Lundy* and its progeny is '[a] blend[ of] enough specific facts … to make plausible the existence of at least one given work week of more than forty hours'") (alterations in original) (quoting *Anjum v. J.C. Penney Co.*, No. 13-CV-460, 2014 WL 5090018, at *17 (E.D.N.Y. Oct. 9, 2014)).  As such, Defendants' motion to dismiss Plaintiffs' claims for unpaid overtime wages under the FLSA and NYLL should be denied.

**C.    Plaintiffs Plausibly Assert Claims For Filing False Tax Information**

Plaintiffs assert Defendants violated 26 U.S.C. § 7434, which "provides a private right of action for an individual who was the subject of a falsely filed information return, allowing her to bring a civil action for damages against 'any person [who] willfully files a fraudulent information return with respect to payments purported to be made to' the individual." *Rosario v. Fresh Smoothies LLC*, No. 20-CV-5831, 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021) (alteration in original) (quoting 26 U.S.C. § 7434(a)), *amended by* 2022 WL 3030602 (S.D.N.Y. Aug. 1, 2022). "To state a claim under § 7434, 'a plaintiff must allege facts to support that: (1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return.'" *Castro v. Hyper Structure Corp.*, No. 21-CV-1391, 2022 WL 2467242, at *8 (E.D.N.Y. March 7, 2022) (quoting *Munn v. APF Management Co.*, No. 19-CV-10791, 2020 WL 7264471, at *4 (S.D.N.Y. Dec. 10, 2020)); *see also Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (holding that willfulness is a required element of a claim under § 7434). A plaintiff who successfully establishes that a defendant filed a false information return may recover the greater of $5,000 or the sum of damages, costs, and attorney's fees. 26 U.S.C. § 7434(b).

Plaintiffs have met their burden in pleading the requisite elements of this claim. They allege that Defendants issued Francisco a form 1099, and Bravo both a form 1099 and W-2. (FAC ¶ 70.) They further allege that Defendants filed 1099 and W-2 forms with the IRS for Bravo, and 1099 forms for Francisco. (*Id.*) IRS forms 1099 and W-2 are information returns for the purposes of § 7434. *See* 26 U.S.C. § 6724(d)(1)(A)(vii) (defining information return to include statement of payments relating to information returns with respect to income tax withheld pursuant to 26 U.S.C. § 6051(d)); *Chen v.*

*Shanghai Café Deluxe, Inc.*, No. 16-CV-4790, 2023 WL 2401376, at *10 (S.D.N.Y. March 8, 2023) ("'Information return' for purposes of the statute includes forms containing, for example, the total amount of wages paid to an employee," such as a W-2).

Plaintiffs further allege that the information in the 1099 and W-2 forms was fraudulent in that it understated the actual compensation paid to Plaintiffs.  (FAC ¶¶ 70-71.)  The FAC explains the specific way in which the information returns were false in that they reflected only the wages paid to them by check and not including those paid by cash. (*Id.*)  And, Plaintiffs allege that Defendants acted intentionally and willfully pursuant to a policy of filing fraudulent tax information returns on Plaintiffs' behalf.  (*Id.* ¶ 68.)   Although that allegation borders on the conclusory, it is sufficient to properly allege Defendants' violation of § 7434.  *See Collado v. Adolfo Meat Market Corp.*, No. 22-CV-9366, 2025 WL 588063, at *3-4 (S.D.N.Y. Feb. 24, 2025) (granting default judgment on § 7434 claim based on similar allegations); *Cano v. Tremson Recycling LLC*, No. 24-CV-1612, 2025 WL 964552, at *12 (S.D.N.Y. March 14, 2025) (same), *R. & R. adopted*, 2025 WL 964253 (S.D.N.Y. March 31, 2025); *Rosario*, 2021 WL 5847633, at *6 (same).

Defendants' motion relies on distinguishable cases, namely *Sarr v. VEP Associates LLC*, No. 22-CV-4386, 2024 WL 1251600 (E.D.N.Y. March 25, 2024).  There, Plaintiffs were denied default judgment because their allegations were unclear as to whether tax forms had been filed on their behalf at all.  *Id.* at *6 (noting that "'the [c]omplaint … permits dual inferences that fraudulent information returns may or may not have been filed' … [and thus] is insufficient to demonstrate Defendants' willful filing of fraudulent tax returns") (quoting *Castro*, 2022 WL 2467242, at *8; *Rosario*, 2021 WL 5847633, at *6).  Such lack of clarity is not present here.  (*See* FAC ¶ 70 ("the 1099 forms

19

and the W-2 forms provided to Plaintiffs **and filed with the Internal Revenue Service** (IRS) only included the compensation that was paid to Plaintiffs through checks, not the money Plaintiffs had received in cash") (emphasis added).)  As such, Defendants' motion to dismiss Plaintiffs' claims for violation of § 7434 should be denied.

### D.    Plaintiffs Plausibly Allege Standing For Their Wage Notice Claims

Plaintiffs allege Defendants violated New York law governing the provision of wage notices and statements.  The NYLL requires employers to provide employees with a wage notice containing basic information such as their rate of pay at the time of hiring.  NYLL § 195(1)(a).  The NYLL also requires employers to provide employees with a wage statement with each payment of wages.  *Id.* § 195(3).  "[These] requirements are intended to assist employees seeking to vindicate their rights and ensure they receive accurate and lawful pay."  *Mangahas v. Eight Oranges Inc.*, 754 F. Supp.3d 468, 506 (S.D.N.Y. 2024).  Plaintiffs allege that they received neither wage notices nor statements from Defendants.  (FAC ¶ 78.)  Defendants nevertheless argue that Plaintiffs do not have standing under Article III of the United States Constitution to assert these claims because they have not suffered a cognizable injury in fact.

"The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016)).  These requirements are "an indispensable part of the plaintiff's case" and must be established "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136

(1992). "[A]t the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Hennessy ex rel. Hennessy v. Poetica Coffee Inc.*, No. 21-CV-5063, 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022) (quoting *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)).

The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo*, 578 U.S. at 341). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427.

Following *TransUnion*, the Second Circuit squarely addressed the question of standing under NYLL § 195 in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). In *Guthrie*, the court explained that to establish Article III standing to pursue claims under Section 195 in federal court, "a plaintiff cannot rely on 'technical violations' of the Labor Law but must allege 'actual injuries suffered as a result of the alleged ... wage notice and wage statement violations.'" *Id.* at 305 (citation omitted). In other words, the plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm" that the statute seeks to prevent. *Id.* at 308. Absent a showing that the plaintiff "plausibly would have avoided some actual harm or obtained some actual benefit" if accurate notices had been provided, there is no "concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195." *Id.*

*Guthrie* recognized that "the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee." *Id.* at 310. For example, a plaintiff may have suffered an injury-in-fact sufficient to establish standing when "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." *Id.* at 309; *see also id.* at 310 (noting that "a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages" has a concrete interest for standing purposes). "But the plaintiff-employee cannot ... rely on speculation and conjecture" to establish the required downstream harm. *Id.* at 309 (internal quotation marks and citation omitted). "Rather, the plaintiff-employee must support a plausible theory as to ***how*** he was injured by [the] defendants' failure to provide the required documents." *Id.* (emphasis and alteration in original) (internal quotation marks and citation omitted).

Here, Plaintiffs allege they were injured by the Defendants' failure to provide wage notices and statements in the manner contemplated by *Guthrie*:

> Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and … deprive[d] employees of timely compensation. Had Defendants provided any wage statements to Plaintiffs … accurately listing the total number of hours Plaintiffs ... worked and their corresponding pay rate … Defendants would have had to either (a) increase the wages to correspond to the hours actually worked, or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiffs … to vindicate their rights under the NYLL.

(FAC ¶ 80-81.) These assertions are quite general, and at least one court has found similarly expressed harm insufficient to establish standing in federal court. *See*

*Brathwaite v. Martini Collections Inc.*, No. 22-CV-4929, 2025 WL 99108, at *7-8 (S.D.N.Y. Jan. 14, 2025), *R. & R. adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025).

Other courts have been more forgiving.  *See, e.g.*, *Castillo v. Isakov*, No. 22-CV-6888, 2024 WL 5323851, at *9 (S.D.N.Y. Dec. 27, 2024) (finding standing where all three plaintiffs alleged similar harms from defendants' violations of Section 195, including that they did not know whether they were being paid correctly; that they were not aware of their rights as employees or what they were to be paid; and that they suffered a loss of wages because they did not know that they were being underpaid), *R. & R. adopted*, 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025); *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231, 2024 WL 4751732, at *9 (S.D.N.Y. Oct. 22, 2024) (finding standing where plaintiffs alleged that "Defendants' failure to provide them with any wage statements or wage notices served to keep [them] uninformed so that [they] did not have proper information to contest the lack of proper wages") (alterations in original) (internal quotation marks omitted), *R. & R. adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024); *Kaur v. Natasha Accessories Ltd.*, No. 23-CV-6948, 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (finding standing where plaintiff alleged that her "wage statements showed fewer hours than what [she] actually worked, which prevented [her] from determining and seeking payment for the precise amount of [her] unpaid wages" and she was thus "harmed by being deprived of [her] income for longer than [she] would have been had [she] been able to timely raise [her] underpayment earlier") (alterations in original) (internal quotation marks omitted); *Cano*, 2025 WL 964552, at *11 (finding standing where plaintiffs alleged that defendants' "failure to provide [them] with [wage notices and statements] caused

[plaintiffs] to endure uncertainty regarding [their] wages and hindered [their] ability to take action to correct Defendants' wage and hour violations").

Furthermore, "in the wake of *Guthrie*, Courts in this Circuit are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was able to hide [its] violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of [his] unpaid wages." *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp.3d 481, 490 (E.D.N.Y. 2024) (internal quotation marks and citations omitted); *see also Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2024 WL 4275286, at *10 (S.D.N.Y. Sept. 24, 2024); *Cinar v. R&G Brenner Income Tax, LLC*, No. 20-CV-1362, 2024 WL 4224046, at *4 (E.D.N.Y. Sept. 18, 2024) (collecting cases).

Plaintiffs here allege that Defendants' conduct "deprived employees of the ability to contest the pay provided by Defendants, [and] allowed Defendants to hide their wrong-doing." (FAC ¶ 80.) As such, and with the above caselaw in mind, the Court finds that Plaintiffs' assertions of "downstream harm" do establish standing in the present case. Plaintiffs allege that the wage notices and statements they received were inaccurate, and did not list the hours that they had actually worked. Had the hours been correctly listed, it would have been apparent to Plaintiffs that they were being underpaid. Deprived of that information, Plaintiffs were unable to "discern whether the salary they received each week correctly reflected the amount they were due." *Cano*, 2025 WL 964552, at *11. Plaintiffs' allegations go beyond "technical violations," and thus satisfy the standard in *Guthrie*. *See*

*Guthrie*, 113 F.4th at 305.  Accordingly, Defendants' motion to dismiss Plaintiffs' claims

under Section 195 of the NYLL for lack of standing should be denied.[5]

## E.    Plaintiffs Have Abandoned Claims For Call-In Pay, Breach of Contract, And Unjust Enrichment

Defendants contend that the FAC does not state a claim for failure to pay call-in-

pay because Plaintiffs' allegations are entirely conclusory.  (Mem. at 3.)  Defendants also

argue that Plaintiffs cannot assert claims for breach of contract and unjust enrichment

because no specific contract is alleged or referred to in their complaint, and because, in

Defendants' view, such common-law claims are preempted by the FLSA.  (*Id.* at 11-13.)

Plaintiffs' opposition does not address any of those arguments or otherwise

attempt to defend the claims for unpaid call-in pay, common-law breach of contract, or

unjust enrichment.  The Court therefore deems those claims abandoned.  *See Malik v.*

*City of New York*, 841 F. App'x 281, 283-84 (2d Cir. 2021) (summary order) (deeming a

claim abandoned when defendant's arguments regarding that claim were not addressed

in plaintiff's opposition to the motion to dismiss); *Romeo & Juliette Laser Hair Removal,*

*Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014)

("At the motion to dismiss stage … a plaintiff abandons a claim by failing to address the

defendant's arguments in support of dismissing that claim"); *Lipton v. County of Orange*,

315 F. Supp.2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a

claim abandoned when a plaintiff fails to respond to a defendant's arguments that the

claim should be dismissed").  Even if the claims were not abandoned, the Court agrees

---

[5] Plaintiffs advance an additional theory of concrete harm, asserting that the lack of accurate wage statements facilitated Defendants' under-reporting of Plaintiffs' wages and thus reduced the amount of Plaintiffs' social security benefits.  (FAC ¶¶ 83-84.)  Inasmuch as Plaintiffs have otherwise alleged sufficient downstream harm, the Court does not address the plausibility of this second theory.

with Defendants that the FAC does not plausibly assert a claim for unpaid call-in pay, breach of contract, or unjust enrichment.  Accordingly, those claims should be dismissed.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion to dismiss be DENIED IN PART and GRANTED IN PART.  The motion should be granted with respect to plaintiffs' claims of breach of contract, unjust enrichment, and unpaid call-in pay, which should be dismissed, and denied in all other respects.  To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

## PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Analisa Torres, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Torres.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 7, 2025
      New York, New York

Copies transmitted this date to all counsel of record